**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARINA KIBARDINA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 14 C 1351** |
| | ) | |
| **v.** | ) | **Judge Jorge Alonso** |
| | ) | |
| **BOARD OF TRUSTEES OF** | ) | |
| **COMMUNITY COLLEGE DISTRICT,** | ) | |
| **508, commonly known as CITY** | ) | |
| **COLLEGES OF CHICAGO, and** | ) | |
| **ALVIN BISARYA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff sues defendants pursuant to 42 U.S.C. § 1983 for their alleged violation of her equal protection rights by discriminating against her on the basis of her race and national origin. The case is before the Court on defendant Board of Trustees' ("Board's") motion to dismiss Count I pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the Court grants the motion.

## Facts

In January 2009, the Board hired plaintiff, who is white and was born in Russia, as District Director of Adult Education. (1st Am. Compl. ¶¶ 1, 17.) On January 15, 2012, the Provost of City Colleges, who is African American, appointed Kibardina to the position of Interim Associate Vice-Chancellor for Adult Education. (*Id.* ¶ 18.) For the next six months, plaintiff successfully performed the job, but defendant Bisarya, who is Asian and the Vice-Chancellor for Strategy, Research and Organizational Effectiveness, reported that she had not.[1] (*Id.* ¶¶ 19-20.) Moreover, Bisarya

---

[1]Plaintiff does not allege to whom Bisarya made this report.

campaigned for an Asian candidate, Sameer Gadkaree, who is less qualified than plaintiff, to be selected for the Associate Vice-Chancellor for Adult Education position on a permanent basis. (*Id.* ¶¶ 19-21.) As a result, Gadkaree was chosen for the position. (*Id.* ¶ 21.)

After passing plaintiff over for the Vice-Chancellor job, the Board refused to let plaintiff return to her previous job as Director of Adult Education. (*Id.* ¶ 22.) On October 1, 2012, the Board terminated her employment. (*Id.*)


## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In Count I, plaintiff asserts a § 1983 equal protection claim against the Board, a local public entity. *See* 110 Ill. Comp. Stat. 805/3-11 (stating that "[t]he board of each community college district is a body politic and corporate . . . that may sue and be sued in all courts and places where judicial proceedings are had."). To state a viable claim, plaintiff must allege that the Board deprived her of a constitutional right pursuant to one of its policies, customs or practices. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-91 (1978). A "policy," in this context, includes a widespread and permanent practice and action by a person with final policymaking authority. *See McCormick v.*

*City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). Plaintiff alleges that her injury resulted from both kinds of "policies." (1st Am. Compl. ¶¶ 11-15.)

With respect to the former, plaintiff alleges that the Board has a "widespread practice of treating Caucasian administrators . . . less favorably" than those who are not Caucasian by giving the "non-Caucasians and non-Russians . . . mid to high-level ranking administrative duties." (*Id.* ¶¶ 11-13, 16.) Defendants argue that these allegations are insufficient to state a *Monell* claim because they are just "conclusory statements parroting the legal elements of a *Monell* claim." (Def.'s Mem. Supp. Mot. Dismiss 1st Am. Compl. at 6.)

The Court agrees. As the Supreme Court explained in *Iqbal*, a complaint need not contain "'detailed factual allegations,'" but it must have "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. 678 (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint must be pleaded with enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *see McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) stating that "[w]e have interpreted *Twombly* and *Iqbal* to require the plaintiff 'to provid[e] some specific facts' to support the legal claims asserted in the complaint" and "'[to] give enough details about the subject-matter of the case to present a story that holds together'") (quoting *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2011); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). That is not the case here. The only example plaintiff provides of the Board's alleged policy of discriminating against Caucasians and individuals of Russian origin is its treatment of her. Though her alleged experience is "consistent with" a discriminatory policy or practice, "without some further factual enhancement[, her complaint] stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (quotation omitted); *see McCauley*, 671 F.3d at 618 (dismissing

equal protection *Monell* claim because "the factual allegations in McCauley's complaint [did not] allow [the court] to draw the reasonable inference that the City established a policy or practice of intentionally discriminating against female victims of domestic violence in the provision of police protection").[2]

Alternatively, plaintiff alleges that her treatment resulted from a Board policy because the decision she contests was made by one of its final policymakers, Bisarya. Whether Bisarya is, in fact, a final policymaker is question of state law. *Radic v. Chi. Transit Auth.*, 73 F.3d 159, 161 (7th Cir. 1996). Under Illinois law, the Board has final policymaking authority with regard to employment decisions. *See* 110 Ill. Comp. Stat. 805/3-42 (giving the Board the power "[t]o employ such personnel as may be needed, to establish policies governing their employment and dismissal, and to fix the amount of their compensation"). Moreover, the Illinois courts have held that the Board's authority with regard to employment decisions cannot be delegated. *See Bd. of Trs. of Cmty. Coll. Dist. No. 508 v. Fed'n of Coll. Clerical & Technical Personnel, Local 1708*, 505 N.E.2d 1264, 1267-68 (Ill. App. Ct. 1987) (analyzing 110 Ill. Comp. Stat. 805/3-42, and saying, "[w]hen the legislature gives a community college Board of trustees discretionary powers, such as whether to rehire or dismiss a nontenured teacher, the power may not be delegated"); *See Bd. of Trs. of Jr. Coll. Dist. No. 508 v. Cook Cnty. Coll. Teachers Union, Local 1600*, 408 N.E.2d 1026, 1029 (Ill. App. Ct. 1980) (stating that a City Colleges' employee's grievance over denial of a promotion "involves a nondelegable duty and responsibility of the Board in the exercise of statutory authority which the Board had neither legal

---

[2]Plaintiff submitted documents with her response to the motion that purportedly support the policy allegations. The Court cannot, however, consider these documents in deciding a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

power nor right to delegate"). Thus, as a matter of law, Bisarya is not a final policymaker for City colleges.

Even if that is true, plaintiff argues that the Board can be liable for his alleged conduct under the "cat's paw" theory of liability. *See Cook v. IPC Int'l Corp.*, 673 F.3d 625, 628 (7th Cir. 2012) ("In employment discrimination law the 'cat's paw' metaphor refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action."). Though the Seventh Circuit has not squarely addressed whether the cat's paw theory applies to municipal employers, the court has suggested that it does not:

> Waters makes a passing reference to the "cat's paw" theory, but we question whether such a theory is applicable for purposes of establishing § 1983 municipal liability. . . . The theory is steeped in agency principles which are applied in the Title VII context, but don't apply to § 1983 municipal liability. . . . Imputing a nondecisionmaker's motive to a municipal employer sounds a lot like respondeat superior liability. Given that well developed § 1983 municipal liability law recognizes delegation and ratification, there seems to be little point in trying to awkwardly fit the cat's paw concept in this area of civil rights law.

*Waters v. City of Chi.*, 580 F.3d 575, 586 n.2 (7th Cir. 2009) (citations omitted). This Court, like the one in *Waters*, finds cat's paw liability to be inconsistent with *Monell's* teaching that there is no respondeat superior liability for municipal entities under § 1983. Accordingly, that theory does not save plaintiff's claim.

Plaintiff fares no better with a ratification theory. *See Rasche v. Vill. of Beecher*, 336 F.3d 588, 598 n.11 (7th Cir. 2003) ("A municipality can ratify the action of its employees by 'adopting an employee's action as its own' and thus becoming 'the author of the action for purposes of liability under section 1983.'" (quoting *Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th

Cir. 2001)).  To state a claim against the Board under such a theory, plaintiff must allege that it both approved of Bisarya's action, *i.e.*, his recommendation that plaintiff not be hired for the Vice-Chancellor position, *and* his basis for it, *i.e.*, his alleged animus against people who are white and/or of Russian origin.  *See Waters*, 580 F.3d at 584 ("We have reiterated that for municipal liability to attach, a municipality must approve both the employee's conduct and the basis for that conduct, *i.e.*, the employee's motivation."); *Rasche*, 336 F.3d at 598 n.11 ("In order to adopt [an employee's] action, the municipality must know of the subordinate's conduct and approve of the conduct and the basis for it.") (quotation omitted).  Plaintiff has not made the requisite allegations.  Thus, he has not stated a viable *Monell* claim against City Colleges.

### Conclusion

For the reasons set forth above, the Court grants City Colleges' motion to dismiss Count I of the first amended complaint [25].  The Court will give plaintiff one final opportunity to amend the *Monell* claim, to the extent she can do so and comply with Rule 11.  Any such amendment is due on or before February 13, 2015.  If no amendment is filed by that time, the Court will dismiss the *Monell* claim with prejudice.

**SO ORDERED.**                    **ENTERED:   January 23, 2015**

**_____**
**HON.  JORGE ALONSO**
**United States District Judge**